

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NO. AP-76,020

MELISSA ELIZABETH LUCIO, Appellant

v.

THE STATE OF TEXAS

ON DIRECT APPEAL
FROM CAMERON COUNTY

**COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.**

## O P I N I O N

I join the majority opinion and write separately only to further explain how the reasoning in this case is consistent with our prior opinion, *Berry v. State*.[1] In *Berry*, we held that the evidence was legally insufficient to establish that there was a probability that the defendant–a mother who had killed one new-born child and abandoned a second one–would commit criminal acts of violence that would constitute a continuing threat to

_____

[1] 233 S.W.3d 847 (Tex. Crim. App. 2007).

society.[2] We explained that "[o]ur precedent states clearly that 'society,' as used in Art. 37.071, includes both prison and the 'free world' and the jury must consider dangerousness in that context."[3] Using that legal standard, we held that

> the state did not meet its burden of proving beyond a reasonable doubt that there is a probability that appellant, if allowed to live, would commit criminal acts of violence in the future so as to constitute a continuing threat, whether in or out of prison. Appellant murdered one child and abandoned another, but defense witnesses testified that these two incidents were out of character and that she was a loving and caring mother to her other three children. Appellant's expert witnesses opined that she was depressed and under extreme stress when she killed Malachi and, five years later, abandoned Paris. She had no criminal record, and the state presented no other evidence of violence in her past. All of her offenses involved a pregnancy, but testimony from both defense and state witnesses showed that her potential for becoming pregnant while incarcerated would be "extremely low." Further, appellant was in her twenties when she was convicted of capital murder. If she received a life sentence and were paroled forty years later, she would be in her sixties and likely beyond her childbearing years and thus could not repeat such an offense.[4]

We explained that, although the State proved a pattern of the defendant keeping, loving, and caring for her three children sired by one man while discarding the two children sired by another man, "it did not prove that any other stimulus led to a violent or dangerous act in any other context."[5] We noted that we "rarely reverse a judgment on a claim of

---

[2] *Berry*, 233 S.W.3d at 863-64.

[3] *Id.* at 863 (citing *Muniz v. State,* 851 S.W.2d 238, 250 (Tex. Crim. App. 1993) (evidence must show that defendant would "constitute a continuing threat to society whether in or out of prison.")).

[4] *Id.* at 863-64 (internal citations omitted).

[5] *Id.* at 864. We further explained that the State "did not show that she had harmed or attempted to harm any of her other children, an unrelated child, or any other person" under any circumstances. *Id.*

insufficient evidence to support a finding that the defendant will be a danger in the future, and we do not do so lightly. In this case, we understand the jury's decision in response to the death of one infant and the abandonment of another, even if that decision is not supported in law."[6]

Part of the problem in the *Berry* case was that the prosecutor, in closing argument, misstated the law and "clearly asked the jury to assume that [the defendant] would be living in the free world."[7] The prosecutor explicitly asked the jury to assess the defendant's potential for future dangerousness based on the false assumption that "she was out and she's among her children or she has another child." We noted that the jury's finding of "future dangerousness" was likely affected by this misstatement, and that the evidence was legally insufficient based upon the unrebutted facts that

- The defendant had no criminal record of any kind;

- She had never physically harmed or abused any person other than the two new-born babies sired by men other than the father of her three other children;

- "She was a loving and caring mother to her other three children";

---

[6] *Id.*

[7] *Id.* The prosecutor stated, *inter alia*,
And we all asked you, when you're asking yourself that question, you have to assume whether she's a future danger sitting there as she sits today, if she was out among us, among other children, is she a future danger. Everything Dr. Gripon said was based on one premise, that she's locked up and that somebody, not her, somebody else, would intervene to protect that child. Remember, he said that she'll be locked up. Well, that assumes the system is locking her up. . . . That assumes that she's locked up. *I submit to you the way you answer this question is if she was out and she's among her children or she has another child, do you think she's a future danger to that child. . . . Some people are just evil.*
*Id.* at 862-63 (emphasis in original).

- The defendant's conduct in killing one infant and abandoning the other was "totally out of character,"[8] according to three witnesses; and

- Expert witnesses opined that the defendant was depressed and under extreme stress when she killed Malachi and, five years later, abandoned Paris.[9]

As the majority in the present case aptly notes, the facts and circumstances in *Berry* are nothing at all like those in the present case. Here, the State did not misstate the law and then argue that the jury should find "future dangerousness" based upon that mistaken premise. Here, there was ample evidence of appellant's abiding character for violence and sadism[10] because she had repeatedly and systematically tortured and brutalized her two-year-old child over the course of approximately two months. This is a woman who repeatedly bit her defenseless child "for no reason" and "pinched" her vagina "just because." Appellant "hit" two-year-old Mariah as if she were a punching bag when she got mad. And when in jail awaiting her trial, appellant still could not control her violent temper; she had "verbal disagreements" with fellow prisoners and was disrespectful to a guard. For more than a decade she had been a generally neglectful mother who used cocaine and whose home was filthy and unsafe for children. CPS had been investigating complaints about her home and children since 1995.

---

[8] *Id.* at 861.

[9] Two mental-health professionals testified that the defendant, at the time she discarded both babies, had just given birth to them and was suffering from postpartum depression–a condition that could cloud her judgment and affect her decision-making process.

[10] The 2004 affidavit of the CPS specialist indicates that appellant also neglected and abused at least three of her other children. One of them, three-year-old Gabriel, had a "bite mark the size of two quarters on his left shoulder." All of the children were dirty and had scabs, scars, bruises, and insect bites.

In sum, the Court holds that the evidence in this case is legally sufficient to support a finding of future dangerousness, just as we held in *Berry* that the evidence was legally *in*sufficient to support future dangerousness.  Both cases are entirely consistent. Each is correct.

With these comments, I join the majority opinion.

Filed: September 14, 2011
Publish